UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| V. | § | No. 5:23-cr-00238-JKP |
| | § | |
| | § | |
| ASHLEY TANYA GARCIA | § | |

**DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE ON MOTION TO DISMISS**

TO THE HONORABLE JASON K. PULLIAM, UNITED STATES DISTRICT COURT JUDGE:

**INTRODUCTION**

Ashley Garcia moved to dismiss the indictment. *See generally* Motion to Dismiss ("MTD") (Doc. 34). The government filed a response to the motion. *See generally* Government's Responsive Brief ("GB") (Doc. 35). Ashley now files this reply to the government's response. Even assuming the truth of the allegations in the government's reply brief, the complaint affidavit, and the indictment, the Court should still dismiss the charges. *See United States v. Cook*, 472 F. Supp. 3d 326 (N.D. Miss. 2020).

**ARGUMENT**

**I.   THE COURT SHOULD DISMISS COUNT ONE (CYBERSTALKING).**

**1)   Section 2261A(2) is facially unconstitutional under the First Amendment. And even if there were contested facts, no merits trial is needed to dismiss on that basis.**

The government claims the Court cannot grant the motion short of a trial on the merits. *See* GB 3-4. But as to Count One—charging cyberstalking under 18 U.S.C. § 2261A(2)—Ashley's lead argument is that the charging statute is facially overbroad under the First Amendment. *See* MTD 7-15. This challenge is based solely on the text of the statute; it requires no factual development at trial. *See United States v. Stevens*, 559 U.S. 460, 474-482 (2010). Either the statute

1

is overbroad as written or it is not. *See id.* If the Court finds that the text of the statute is overbroad, as Ashley showed, then the Court can and should dismiss Count One—without a trial.[1]

True, as the government notes (GB 8-9), and as Ashley first preemptively noted (MTD 15, 19), the most recent (and best) federal circuit court opinions addressing the statute have read it to only apply to the traditional unprotected categories of speech, in order to avoid ruling the statute unconstitutional. *See United States v. Sryniawski*, 48 F.4th 583, 587–88 (8th Cir. 2022); *United States v. Yung*, 37 F.4th 70, 79-81 (3d Cir. 2022). In *Yung*, for instance, the Third Circuit was able to avoid an overbreadth finding and affirm the defendant's conviction by employing this reading, because the defendant engaged in least true threats and defamation (unprotected categories of speech) and so did not raise a doomed as-applied challenge. *See* 37 F.4th at 74–76, 80. Not so here. Ashley *does* raise a meritorious as-applied challenge—because the government does not allege Ashley engaged in any categories of unprotected speech. *See* MTD 15-28. So even using the limiting construction of *Yung* and *Sryniawski* to avoid facial invalidity, the Court should still dismiss the indictment for as-applied unconstitutionality or for failure to state an offense.

## 2) The Court can dismiss—short of a trial—because § 2261A(2) violates the First Amendment as applied, even assuming the government's allegations are true.

The government claims the Court cannot dismiss Count One for as-applied unconstitutionality under the First Amendment, because a merits trial is first needed to ascertain the facts. *See* GB 3-4. That is wrong. To support this claim, the government cites case law explaining that defendants cannot obtain pretrial dismissal based on arguments that raise contested

---

[1] Alternatively, Ashley argued the statute flunks strict scrutiny on its face because it fails to advance a compelling government interest (protecting people from emotional distress doesn't quality) and/or it fails to use the least restrictive means available (since its text reaches well beyond the categories of unprotected speech). *See* MTD 17-18. The government doesn't appear to concretely address this argument.

issues of fact. *See* GB 3-4. That is not what Ashley is arguing. Rather, Ashley is arguing that even assuming the truth of the government's factual allegations, those very allegations show the statute violates the First Amendment (or fails to state an offense) here. And the Fifth Circuit allows the Court to grant a pretrial motion to dismiss on a purely legal ground involving undisputed facts, to avoid a needless trial at which the Court would have to dismiss (or acquit) based on the exact same arguments raised pretrial. *See United States v. Flores*, 404 F.3d 320, 324–26 (5th Cir. 2005); *United States v. Korn*, 557 F.2d 1089, 1090–91 (5th Cir. 1977). Unlike some other circuits, the Fifth Circuit even allows the Court to "look beyond the face of the indictment" in ruling on a legal challenge to a charge. *See Flores*, 404 F.3d at 324-25.[2]

To explain, Count One of the indictment simply charges that Ashley engaged in speech (and some conduct, not itself sufficient to convict) that caused, attempted to cause, or would reasonably be expected to cause substantial emotional distress to C.K., with intent to harass or intimidate C.K. *See* Doc. 12. Yet the First Amendment protects speech that causes major emotional anguish, and it protects harassing or intimidating speech as long as that speech does not fall into one of the traditional categories of unprotected speech, such as true threats or defamation or speech integral to some other independent and valid non-speech crime. And nowhere—not in its indictment, not in its complaint affidavit, and not in its responsive brief—does the government allege Ashley's speech fell into any of these unprotected categories. For instance, the government does not claim Ashley lied about C.K. posting nude photos online, and it does not claim that the

---

[2] As Ashley noted, she supplemented her arguments with factual claims from the ex-boyfriend's text messages in order to illustrate the absurdity of the charges. *See* MTD at 3 n.1. But also as Ashley explained, the Court need not find those facts to grant the motion on any or all bases. *See id.* Rather, even assuming the truth of the government's allegations, the Court can and should dismiss the indictment as a matter of law, on any one or all of the grounds raised.

nudity-censored photo (emailed to C.K.'s employer) was not one C.K. first posted online—without censoring. Count One violates the First Amendment as applied here (or fails to state an offense).

After all, courts have granted *pretrial* motions to dismiss federal cyberstalking charges for as-applied First Amendment violations. *See United States v. Cook*, 472 F. Supp. 3d 326, 340 (N.D. Miss. 2020) (current version of cyberstalking statute); *United States v. Cassidy*, 814 F. Supp. 2d 574, 588 (D. Md. 2011) (prior version of statute). This was because, even assuming the truth of the government's allegations, those allegations showed the statute violated the First Amendment in those cases. For example, *Cook* and *Cassidy* relied entirely on the government's own allegations in each case's complaint affidavit and indictment—as well as on what the government did not allege. *See Cook*, 472 F. Supp. 3d at 328–31; *Cassidy*, 814 F. Supp. 2d at 578–80. This Court may do likewise. And *Cook* was a case within the Fifth Circuit. If the government was correct in its theory (that pretrial dismissal is impossible when the indictment charges the statutory elements), then *Cook* could not have dismissed short of a trial. But *Cook* did, and rightly so. This Court can and should do likewise. *See Flores*, 404 F.3d at 324–26.

### 3) Backing up, the government has charged Ashley for her speech. The First Amendment applies.

As Ashley also anticipated (MTD 9), the government now alleges it is prosecuting Ashley for her conduct, not her speech. *See* GB 5-6. It focuses on her act of creating web links to her blog, as well as allegedly creating social media profiles (with apparently no offensive content) featuring the ex-boyfriend—which is a new allegation to Ashley, since the government has not given Ashley all of its discovery despite the looming trial date. The government's claim fails.

As to the text of the statute, even though it uses the word "conduct," the government cannot "foreclose the exercise of constitutional rights by mere labels," *NAACP v. Button*, 371 U.S. 415, 429 (1963), like "advocacy of unlawful acts" or "breach of the peace" or "various other formulae

for the repression of expression," *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 269 (1964). "Likewise, it may not eliminate First Amendment scrutiny by just labeling communication as the 'conduct' of 'harassment.'" Eugene Volokh, *One-to-One Speech vs. One-to-Many Speech, Criminal Harassment Laws, and "Cyberstalking,"* 107 Nw. U. L. Rev. 731, 771 (2013). This is why *Yung* concluded that, despite the fact the statute's text uses the word "conduct," § 2261A(2) obviously "reaches a lot of speech: it targets emails, texts, and social media posts." 37 F.4th at 77.[3]

And that kind of speech noted in *Yung*—emails and social media (blog) posts—is just what the government charges here. Even though there was some conduct involved, like creating the links or profiles, when "conduct" is "sufficiently imbued with elements of communication," then it "fall[s] within the scope of the First . . . Amendment[.]" *Texas v. Johnson*, 491 U.S. 397, 404 (1989) (cleaned up). This is why Justice Blackmun was wrong in his dissent in *Cohen v. California* when he claimed that wearing a jacket that said "fuck the draft" was mainly conduct, *see* 403 U.S. 15, 27 (1971) (Blackmun, J., dissenting), because "wearing a jacket" wasn't "why Cohen was being punished; Cohen was being punished because of the speech written on the jacket," which is "a speech restriction, and labelling it 'conduct' . . . shouldn't strip it of constitutional protection." Volokh, *One-to-One Speech vs. One-to-Many Speech*, 107 Nw. U. L. Rev. at 771. This is exactly why *Cook* held the defendant was being prosecuted for his speech by posting offensive messages on social media, not just the conduct of posting. *See* 472 F. Supp. 3d at 331–32.

---

[3] The fact the statute obviously reaches speech was in part why *Yung* noted the statute was so ripe for an overbreadth challenge (absent a limiting construction that doesn't help the government here). By comparison to *Yung* and *Sryniawski* (which read the statute the same way), the contrary case law cited by the government is poorly reasoned. *See* GB 5 (citing *United States v. Osinger*, 753 F.3d 939, 943–45 (9th Cir. 2014), *and United States v. Petrovic*, 701 F.3d 849, 856 (8th Cir. 2012), as to overbreadth).

The government also paints a straw-man version of Ashley's as-applied argument, GB 6, comparing this case to *United States v. Sayer*, where the defendant apparently claimed the First Amendment barred his prosecution simply because he was engaged in speech. *See* 748 F.3d 425, 433–34 (1st Cir. 2014). But Ashley's as-applied argument is that (even if the Court does not find overbreadth) her speech is protected not merely because it is speech, but because it falls outside the traditional categories of unprotected speech (or alternatively the statute fails means-ends scrutiny here). *See* MTD 15-28. *Sayer* proves Ashley's point. *Sayer* rejected the defendant's First Amendment as-applied challenge because his speech fell into a traditional unprotected category: speech integral to a separate and valid non-speech crime. *See* 748 F.3d at 433–34 (the defendant created fake online profiles impersonating the female victim and repeatedly invited dangerous men to her home for sex, resulting in obvious real-life harassment, not just offensive speech). Here, the government does not allege Ashley's speech falls into any of these unprotected categories.

So even though there was some conduct involved here, like creating links, the entire reason for the prosecution is the offensive speech contained in the emails and the blog posts. "If one were to remove the content of the speech altogether in the present case, one would be left only with the defendant" sending emails and creating blog posts, links, and profiles, which "would not, and could not, serve as a basis for violating the statute." *State v. Billings*, 287 A.3d 146, 167 (Conn. App. 2022), *cert. denied*, 346 Conn. 907 (2023) (applying *Sryniawski*-like limiting construction to similar state stalking statute and, after setting aside speech that didn't fall into traditional unprotected categories, finding evidence insufficient). So the main "'conduct' which the [government] sought to punish is the fact of communication.'" *Id.* (quoting *Cohen*, 403 U.S. at 18). If the speech was not offensive, there would be no charge for merely sending emails and creating blog posts, links, and profiles. Who would've cared?

And not only that, but because the statute reaches this speech due to its effect of being offensive to the audience (and distressing the ex-boyfriend), it is content-based. *See* MTD 9-10, 16-17; *see also* Volokh, One-to-One Speech vs. One-to-Many Speech, 107 Nw. U. L. Rev. at 768–69. So the statute is "presumptively invalid," and the government bears the burden to justify it. *See United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 817 (2000) (cleaned up). The government cannot meet this burden.

4) **Short of overbreadth, the Court should dismiss because the government does not allege Ashley has trod into a category of unprotected speech. This avoids vagueness.**

To avoid a facial overbreadth ruling, *Yung* interpreted § 2261A(2) to only apply to the traditional unprotected categories of speech. *See* 37 F.4th at 76-81. *Sryniawski* too employed the same limiting construction. *See* 48 F.4th at 587–89. In contrast, the government here refers to these categories as "pigeonhole[s]," GB 6, instead requesting that the Court (short of deeming the First Amendment entirely inapplicable) engage in a nebulous balancing test to decide if the charge violates the First Amendment, *see* GB 6-9. Yet *Yung* and *Sryniawski* were right to conclude that, short of a facial overbreadth ruling, § 2261A(2) can only pass First Amendment muster if it applies to the traditional categories of unprotected speech. As the en banc D.C. Court of Appeals explained in using the same limiting construction on a cyberstalking statute, any broader reading—resorting to means-ends balancing beyond the well-defined categories—would just result in vagueness:

> [T]he Constitution does not, in and of itself, provide a bright enough line to guide primary conduct, and [ ] a law whose reach into the protected sphere is limited only by the background assurance that unconstitutional applications will eventually be set aside is a law that will deter too much that is in fact protected.

*Mashaud v. Boone*, 295 A.3d 1139, 1163 (D.C. 2023) (en banc) (quoting Laurence H. Tribe, *American Constitutional Law* § 12-29, at 1031 (2d ed. 1988) (emphasis omitted)). Or put different, the government's preferred reading—applying means-ends scrutiny beyond the traditional well-

defined exceptions—"simply exchanges overbreadth for vagueness." Volokh, *One-to-One Speech vs. One-to-Many Speech*, 107 Nw. U. L. Rev. at 766 n.175 (cleaned up).

Thus, "[o]nce we get outside the First Amendment exceptions, harassment laws that cover one-to-many speech"—i.e., speech directed not to the victim, but to third-parties or the public, as here—"should not be constitutional." *Id.* at 767. That "is precisely what some . . . courts have held in limiting their stalking or harassment laws to speech that fits within the First Amendment exceptions." *Id.* at 767-68 (citation omitted). Like *Yung* and *Sryniawski*, if the Court does not hold the statute facially overbroad, it should read the statute to only apply to the traditional, well-defined categories of unprotected speech, like incitement, obscenity, defamation, fighting words, child pornography, speech integral to criminal conduct, or true threats. *See, e.g., United States v. Alvarez*, 567 U.S. 709, 717 (2012) (listing categories).

So read, the statute violates the First Amendment as applied to Ashley. As she has shown, the government nowhere alleges—not in its complaint affidavit, not in the indictment, and not in its responsive brief—that Ashley engaged in any of the traditional categories of unprotected speech. The government does not allege true threats (of violence). *See* MTD 20-21. The government does not allege defamation (untrue claims of disprovable fact). *See* MTD 24. The government does not allege speech integral to an independent and valid non-speech crime. *See* MTD 22-24. Rather, what the government alleges here—engaging in speech to third-parties or the public to disclose embarrassing private facts about an alleged victim, with intent to harass or intimidate the alleged victim and with the result of causing emotional distress—does not fall into any category of unprotected speech. *See generally* Volokh, *One-to-One Speech vs. One-to-Many Speech*, 107 Nw. U. L. Rev. 73. After all, "[t]here is no categorical 'harassment exception' to the First Amendment's free speech clause." *Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200, 204 (3d

Cir. 2001) (Alito, J.); *see also Yung*, 37 F.4th at 78. Nor is there such a general intimidation exception. *See Yung*, 37 F.4th at 78. Charging communication under this statute can only stand if the communications fall one of the categories of unprotected speech, none of which the government alleges. *See Sryniawski*, 48 F.4th at 587–89; *see also generally* Volokh, *One-to-One Speech vs. One-to-Many Speech*.

The lack of a clearly invoked First Amendment exception is the "key distinction" between this case and the federal circuit decisions rejecting First Amendment challenges to the federal cyberstalking law: unlike here, "the defendants in those cases engaged in unprotected nonspeech conduct, in addition to speech, *and* the speech in question was integral to some criminal offense." *Billings*, 287 A.3d at 167 (discussing some of these cases) (emphasis added).

- *Yung*, 37 F.4th at 74–76, 80 (defendant's plea admitted unprotected speech—like impersonating the victim online *and then* bragging about raping women and children or soliciting men to sexually assault the victim's wife—so the defendant could not mount an as-applied challenge, which is how the Third Circuit could affirm using the limiting construction, since the defendant's "campaign of terror" constituted true threats or speech integral to non-speech crime);

- *United States v. Fleury*, 20 F.4th 1353, 1364–66 (11th Cir. 2021) (the defendant sent harassing messages directly to the victims, as well as uttering true threats);

- *United States v. Ackell*, 907 F.3d 67, 70–71 (1st Cir. 2018) (40-plus-year-old defendant engaged in online sexual relationship with minor, involving lying about his age and requesting sexual photos of her, after which he extorted her by threatening to disclose the photos to her family and friends if she did not send him new ones, though on such bad facts the defendant chose not to raise as-applied challenge);

- *United States v. Osinger*, 753 F.3d 939, 952-53 (9th Cir. 2014) (Watford, J., concurring) (the defendant's conduct involved harassing the victim "by repeatedly showing up at her home and workplace, despite her efforts to avoid him," as well as other unwanted communications directed to her);

- *United States v. Sayer*, 748 F.3d 425, 434 (1st Cir. 2014) (defendant's conduct included soliciting men to show up at the victim's home for sexual encounters, thereby involving real-life harassment);

- *United States v. Petrovic*, 701 F.3d 849, 855 (8th Cir. 2012) (defendant's harassing and distressing communications were integral to criminal conduct of extortion).

Not so here. This case is more like *Sryniawski*, where the Eighth Circuit read the cyberstalking statute to only apply to the unprotected categories of speech and then reversed the conviction because the government did not prove the defendant's speech fell into any of these categories. *See* 48 F.4th at 587–89.

      The government nowhere claims Ashley engaged in any of the precisely defined categories of unprotected speech. What the government does say is that "the Defendant's conduct in stealing the victim's identity and engaging in intentional acts to cause him" emotional distress and allegedly adverse employment consequences "is precisely the kind of harassment and intimidation that Congress was seeking to prevent by passage of the statute." GB 8. But whatever Congress's intent, it still can't pass statutes that violate the First Amendment and then insulate them from invalidation because it intended the unconstitutional result. And even if the government had clearly tried to claim that harassment or intimidation or purported identity theft triggered the "speech integral to another crime" exception (it does not so claim), Ashley showed why such a "circular and unpersuasive" argument would fail. *See* MTD 22-24 (quoting *Sryniawski*, 48 F.4th at 588).

      In fact, in *United States v. Conlan*, the Fifth Circuit appeared to read the cyberstalking statute to only apply to true threats of death or physical harm. *See* 786 F.3d 380, 385–86 (5th Cir. 2015); MTD 20. True, Conlan may have been charged under the pre-2013 version of the statute. GB 9-10. But that included similar language permitting conviction for "engag[ing] in a course of conduct that causes substantial emotional distress to" the alleged victim, with intent to "harass" or "place under surveillance with intent to . . . harass [or] intimidate. . . or cause substantial emotional

distress" to the victim.[4] And despite the pre-2013 statute including this language similar to the current version—and with harassment and intimidation being at issue in *Conlan*—the Fifth Circuit still concluded that "§ 2261A does not criminalize constitutionally protected free expression" because "[t]o violate the statute one must both intend to cause victims serious harm and in fact cause a reasonable fear of death or serious bodily injury." *Conlan*, 786 F.3d at 386. Despite the government's contrary protestations, GB 9, this limiting instruction is similar to the one used by *Yung* and *Sryniawski* —reading the statute to only apply to the traditional categories of unprotected speech *despite* the plain text applying broadly to harassment and intimidation. It's true the Fifth Circuit did not explicitly and clearly say it was only reading the statute to apply to true threats. GB 9. But it's also true that it did not explicitly and clearly say it was applying a broader reading. *See Conlan*, 786 F.3d at 386. Especially where due process fair notice is at issue (as discussed below), this is key. Since the government does not allege Ashley engaged in true threats, the Court could rely heavily on *Conlan* to find the charging statute violates the First Amendment as applied here.

Regardless, even if the Court uses the somewhat broader limiting construction of *Yung* and *Sryniawski*—reading the statute to apply to the categories of unprotected speech (including, but not limited to, true threats)—the statute still fails to pass muster here. Based on the government's own allegations, the Court should dismiss Count One because § 2261A(2) violates the First Amendment as applied here. *See Cook*, 472 F. Supp. 3d at 328-340 (applying Supreme Court and Fifth Circuit law to do exactly this). In fact, because the government nowhere clearly claims that Ashley engaged in any of the categories of unprotected speech, the Court should find that it has waived such a claim. *See United States v. Arellano-Banuelos*, 912 F.3d 862, 865 n.2 (5th Cir.

---

[4] *Compare* Violence Against Women and Department Of Justice Reauthorization Act of 2005, PL 109–162, 119 Stat 2960 (January 5, 2006) *with* Violence Against Women Reauthorization Act of 2013, PL 113-4, 127 Stat 54, 77-78 (March 7, 2013).

2019) (exercising discretion to find government waived issue); *Bollschweiler v. El Paso Elec. Co.*, 166 F. Supp. 3d 808, 815–16 (W.D. Tex. 2016) (responding party can waive issue by failing to brief it in district court). Applying § 2261A(2) violates the First Amendment here.

5) **If the Court takes up the government's invitation to engage in a nebulous First Amendment balancing test, § 2261A(2) still fails that test.**

Instead of trying to argue that its allegations trigger any of the well-recognized exceptions to the First Amendment (which are not "pigeonhole[s]"), the government requests that the Court engage in a nebulous balancing test to find that the statute passes First Amendment muster. *See* GB 6-9. Even setting aside (for now) the vagueness problems posed by this request, the statute fails means-ends balancing as applied here. As Ashley has shown, the statute as used here is both a content-based and a viewpoint-based regulation of speech, either of which triggers strict scrutiny. *See* MTD 16-17. And even using intermediate scrutiny (for content-neutral regulations or for conduct having an incidental impact on speech), the statute still fails. *See* MTD 27-28.[5] The government cannot criminalize speech simply "because the speech in question may have an adverse emotional impact on the audience." *Boos v. Barry*, 485 U.S. 312, 322 (1988) (cleaned up). So the "Government's interest in criminalizing speech that inflicts emotional distress is not a compelling one." *United States v. Cassidy*, 814 F. Supp. 2d 574, 585 (D. Md. 2011) (dismissing cyberstalking charge under First Amendment); *see also Cook*, 472 F. Supp. 3d at 339–40 (same). Nor an important one. *Cf. Cassidy,* 814 F. Supp. 2d at 586–87 (as-applied dismissal warranted even assuming intermediate scrutiny). And regardless, the cyberstalking statute is far from narrowly tailored, applying—without a limiting construction confining it to the traditional unprotected speech categories—to a lot of speech that is protected, due to the use of broad words

---

[5] Beyond arguing against overbreadth, it is not clear to Ashley what type of scrutiny the government purports to apply. *See* GB 6-9.

like "harass" and "intimidate." *See Yung*, 37 F.4th at 79 (the canons of statutory construction "support the broad reading of the statute," under which the statute applies beyond the unprotected categories). And since the government's alleged "course of conduct" here falls well on the broad side of the "harass" and "intimidate" meanings, the statute is not narrowly tailored as applied here, *see* MTD 18-28, not even using intermediate scrutiny, *Cassidy*, 814 F. Supp. 2d at 586–87.

The government argues otherwise by claiming that Ashley's speech was unimportant, ill-meaning, and private. But as Ashley showed, the First Amendment protects speech that is unimportant or said with hostile motives. *See* MTD 24-25; *United States v. Stevens*, 559 U.S. 460, 479-80 (2010); Volokh, *One-to-One Speech vs. One-to-Many Speech*, 107 Nw. U. L. Rev. at 773–83. And while many cases stress the importance of speech about public matters, the First Amendment still protects speech about private matters. *See* MTD 26; *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 600 (2008); *Stevens*, 559 U.S. at 479-80 ("[e]ven wholly neutral futilities" protected); Volokh, *One-to-One Speech vs. One-to-Many Speech*, 107 Nw. U. L. Rev. at 783–88. The government complains that the Supreme Court cases Ashley cited for her private speech claim are civil, not criminal. GB 7. But that favors Ashley's arguments because constitutional protections are stronger in criminal cases, including against vague laws: "A statute that defined punishable speech in terms of public concern would . . . not give speakers, prosecutors, judges, or juries enough guidance about what speech is punishable." Volokh, *One-to-One Speech vs. One-to-Many Speech*, 107 Nw. U. L. Rev. at 786 (also arguing that communications about a victim's perceived wrongdoing "cannot lead to . . . criminal punishment . . . when they are true" or, as here, when the government does not allege untruth).

Section 2261A(2) fails means-ends scrutiny here.

**6)  For the same reasons, Count One fails to state an offense.**

Consistent with avoidance and lenity, reading § 2261A(2) to only apply to the categories of unprotected speech (and perhaps only to true threats under *Conlan*), Count One fails to state an offense since the government does not claim Ashley's communications fell into any category of unprotected speech. *See* MTD 28-31. The government does not concretely argue otherwise.

**7)  If the Court permits the government to try and convict Ashley without dismissing Count One under the First Amendment, then § 2261A(2) is void for vagueness here.**

If the Court declines to dismiss Count One under the First Amendment—whether by finding § 2261A(2) unconstitutional or by reading § 2261A(2) to avoid that result and so dismissing for failure to state an offense—then § 2261A(2) is void for vagueness here. *See* MTD 31-33. The government cites no case that would've given Ashley clear notice that her course of conduct—when she engaged in it—was prohibited by § 2261A(2). As discussed above in the bullet-point list, the circuit court cases affirming § 2261A convictions over First Amendment challenges all involved cases where the government alleged the defendant's communication fell into a recognized exception to the First Amendment. *See supra*. The government lodges no such allegation here. Instead, the government claims the law is not vague because Congress intended that it be broad. *See* GB 10. But how does that help? The more expansive a statute, the more *likely* it is to be vague. If "[t]he Government is unclear why Defendant thinks Congress should answer 'the question of whether her conduct . . . could even violate the statute,'" GB 10 (quoting MTD 31), then Ashley submits the government does not appear to understand the void-for-vagueness doctrine—which is not a point in favor of denying the motion.

And the vagueness here is even more pronounced if the Court reads the statute to legally apply beyond the recognized First Amendment exceptions, as argued above:

First Amendment doctrine is complicated and uncertain, especially once one reaches beyond the historically defined First Amendment exceptions (for incitement, obscenity, threats, fighting words, and defamation). The Court has never expressly defined what it takes for an interest to be 'compelling' or even 'substantial.' It has never decided whether there ought to be First Amendment exceptions for, say, speech that discloses private facts about another person or speech that uses another's name without that person's permission, and what the scope of those exceptions would be. A speaker who is considering whether her speech could get her sent to prison needs more guidance than that offered by an assurance that 'constitutionally protected speech' is immunized from prosecution.

Volokh, *One-to-One Speech vs. One-to-Many Speech*, 107 Nw. U. L. Rev. at 766. Thus, "[o]nce we get outside the First Amendment exceptions, harassment laws that cover one-to-many speech should not be constitutional." *Id.* at 767. The government cites no case where a defendant was prosecuted under the cyberstalking statute for communicating about an alleged victim to third-parties or the public, with no allegation that the communication was an untrue claim of verifiable fact, a true threat, integral to an independent and valid non-speech crime, or otherwise fell into a recognized exception to the First Amendment. If Count One is not dismissed under the First Amendment or for failure to state an offense, then § 2261A(2) is void for vagueness here.

## II.  COUNT TWO FAILS TO STATE AN OFFENSE—OR ITS CHARGING STATUTE IS VOID FOR VAGUENESS.

Count Two—charging identity theft under 18 U.S.C. § 1028(a)(7)—fails to state an offense for two independent reasons. First, Count Two requires proof of cyberstalking under § 2261A(2), but cyberstalking is not a valid charge here, as discussed. *See* MTD 34. Of course, the government claims otherwise. *See* GB 11. But Ashley has shown the cyberstalking charge must be dismissed.

Second and alternatively, Count Two also fails to state an offense because § 1028(a)(7) should be read to require "that the defendant attempt to pass him or herself off as another person or purport to take some other action on another person's behalf." *United States v. Berroa*, 856 F.3d 141, 156 (1st Cir. 2017); MTD 34-35. Or to the extent it is read more broadly to apply to Ashley's conduct, § 1028(a)(7) is void for vagueness as applied here for lack of clear notice. *See* MTD 35-

15

36. True, as Ashley already conceded, she based this argument on case law interpreting the similar aggravated identity theft statute. *See* MTD 34-35. The government replies that identity theft is broader than aggravated identity theft, and this breadth is part of the reason the government claims the statute is not void for vagueness as applied. *See* GB 11-14. Yet Ashley must note (again) that the breadth of a law is not a point against vagueness. And (again) the government cites no case applying § 1028(a)(7) for using someone's name to create links on the internet in order to make negative claims about the person (rather than, say, fraudulently trying to bilk money out of people on the victim's behalf). Section 1028 is titled "*Fraud* and related activity in connection with identification . . . information," but where is the "fraud"—or anything like fraud—here?[6] If Count Two is not dismissed for failure to state an offense, then § 1028(a)(7) is void for vagueness here.

## CONCLUSION

The Court should grant the motion.

Respectfully Submitted,

Maureen Scott Franco
Federal Public Defender

/S/
/s/ MARINA-THAIS DOUENAT
Assistant Federal Public Defender
Western District of Texas
300 Convent Street, Suite 2300
San Antonio, Texas 78205
State Bar No. 24059016
(210) 472-6700
(210) 472-4454 (Fax)
State Bar Number:  00798310

*Attorney for Defendant*

---

[6] The government has provided no discovery regarding fake (and apparently merely duplicative and inoffensive) social media profiles, but that is not a fact question precluding dismissal of Count Two. *See* GB 12-13. This is because—again—Count Two requires proof of cyberstalking, so Count Two fails for that reason regardless of whether such profiles would be chargeable.

**CERTIFICATE OF SERVICE**

I hereby certify that on the 3rd day of October, 2023, I electronically filed the foregoing with the Clerk of Courts using the CM/ECF system which will send notification of such filing to the following:

Bettina J. Richardson
Assistant United States Attorney
601 N. W. Loop 410, Suite 600
San Antonio, Texas 78216

/S/

/s/ MARINA-THAIS DOUENAT

*Attorney for Defendant*

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **V.** | § | **No. 5:23-cr-00238-JKP** |
| | § | |
| | § | |
| **ASHLEY TANYA GARCIA** | § | |

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS INDICTMENT**

On this day, the Court considered Defendant's Motion to Dismiss the Indictment, and the Court is of the opinion that the motion should be **GRANTED**. Accordingly, it is hereby:

**ORDERED** that the Indictment is **DISMISSED**.

SIGNED this ____ day of _____, 20__.


_____
JASON K. PULLIAM
UNITED STATES DISTRICT JUDGE